# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ANTHONY J. DENOMA,  
     Plaintiff,

     vs.

GOVERNOR JOHN R. KASICH,  
et al.,  
     Defendants.

Case No. 1:15-cv-594

Black, J.  
Bowman, M.J.

**ORDER AND REPORT  
AND RECOMMENDATION**

Plaintiff, an inmate in state custody at the Lebanon Correctional Institution (LeCI) in Lebanon, Ohio, brings this civil action against numerous current and former state officials and correctional personnel.  (*See* Doc. 1). By separate Order, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious.  *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).  A complaint may be dismissed as

frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress has also authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-

2

pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.  The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

Plaintiff, who is proceeding *pro se*, brings this action against the following defendants: Ohio Governor John R. Kasich and former Ohio Governor Ted Strickland; Ohio Attorney General Mike DeWine, two former Ohio Attorney Generals and Assistant Ohio Attorney General Stephanie Watson; sixteen Ohio Supreme Court justices; Ohio Department of Rehabilitation and Correction (ODRC) Director Gary Mohr, three former ODRC Directors, ODRC Deputy Director Doug Forbes, ODRC Bureau of Sentence Computation (BOSC) Chief Melissa Adams and eight ODRC "Records Supervisors" (hereinafter the "ODRC defendants"); sixteen Ohio Adult Parole Authority (OAPA) Board members (hereinafter the "OAPA defendants"); six former Wardens of Chillicothe Correctional Institution (CCI) and seventeen CCI staff members (hereinafter the "CCI defendants"); the Warden of Southeastern Correctional Complex (SCC), Sherri Duffey, and five SCC staff members (hereinafter the "SCC defendants"); two school principals and Superintendent Denise L. Justice of the Ohio Central School System in London, Ohio; four judges on the "Fourth District Court of Appeals" in Chillicothe, Ohio; the Warden of LeCI, Ernie

Moore, and five LeCI staff members (hereinafter the "LeCI defendants"); Hamilton County; Hamilton County Commissioners Greg Hartmann, Chris Monzel, Todd Portune "and predecessors"; Hamilton County Prosecuting Attorneys Joseph T. Deters, Mark E. Piepmeier, Patrick X. Dressing and Paula E. Adams; Hamilton County Public Defender Daniel E. Burke, Jr.; former Hamilton County Sheriff Simon Leis; two  Hamilton County Common Pleas Court judges; and eight "Hamilton County First District Court of Appeals" judges.  (Doc. 1, at PAGEID#: 14-15).

Plaintiff's pleading is rambling and often difficult to follow.  Upon close review of the pleading with attachments, however, the undersigned was able to piece together the following factual background.  Plaintiff is in state custody based on his 1995 convictions in two Hamilton County, Ohio, Court of Common Pleas cases (Case Nos. B951322 and B9502232) following his entry of guilty pleas to criminal charges of gross sexual imposition, rape and felonious sexual penetration.  (*See id.*, at PAGEID#: 28, 72-73).  Plaintiff was sentenced in April 1995 to concurrent indefinite terms of imprisonment of ten (10) to twenty-five (25) years for the rape and felonious sexual penetration offenses in Case No. B9502232, to be served concurrently with a two-year prison sentence for the gross sexual imposition offense in Case No. B951322.  (*See id.*, at PAGEID#: 72-73).  On August 12, 1997, the trial judge entered an order deferring the scheduling of plaintiff's "sexual predator hearing" pursuant to Ohio's sex offender classification, registration and notification statute, Ohio Rev. Code Chapter 2950.[1]  (*See id.*, at PAGEID#: 74).

_____

1 Ohio has had sex offender registration statutes since 1963.  *See State v. Hayden*, 773 N.E.2d 502, 504 (Ohio 2002).  As the Ohio Supreme Court explained in *Hayden*, 773 N.E.2d at 504, "the law became more complex in 1996 due in large part to New Jersey's 1994 passage of 'Megan's Law.'"  Ohio Rev. Code Chapter 2950 was repealed and reenacted in 1997 to incorporate the Megan's Law registration and notification requirements for sex offenders upon their release from prison.  *See id.*  Since 1997, the Ohio legislature has enacted amendments to Chapter 2950 by way of Senate Bill 5 in 2003 and Senate Bill 10 in 2007.  *See State v. Ferguson*, 896 N.E.2d 110, 112 & n.1 (Ohio 2008).  The Ohio Supreme Court has held that changes made to the statute prior to Senate Bill 10

Thereafter, on October 5, 2001, the trial judge entered an order finding that plaintiff "is not a sexual predator" under Ohio Rev. Code § 2950.09. (*Id.*, at PAGEID#: 28, 75). On October 29, 2008, a Hamilton County Common Pleas Court judge issued two entries in a matter numbered SP0800368, which had been brought "for review of a previous sexual predator determination . . . on October 5, 2001 by entry only." (*See id.*, at PAGEID#: 28, 111-12). In the entries issued in 2008, it was determined that plaintiff "is a Sexually Oriented Offender" under Ohio Rev. Code § 2950.09; that "the registration requirements, as set out in R.C. 2950.04, R.C. 2950.05, and R.C. 2950.06 as applicable to a **Tier III offender** apply" to plaintiff; and that plaintiff "is not subject to the community notification provisions under R.C. 2950.11." (*Id.*, at PAGEID#: 111-12) (emphasis is original). Since his incarceration in 1995, plaintiff has been denied parole on at least two occasions. (*See id.*, at PAGEID#: 100-01, 115). In a decision issued by the Ohio Parole Board in October 2013, it was recommended that the matter be "continued to max."[2] which is February 4, 2020 according to a memorandum issued on August 2, 2011 by a BOSC record supervisor. (*Id.*, at PAGEID#: 115).

Construing plaintiff's pleading liberally, it appears that plaintiff is bringing a hybrid

---

may be applied retroactively to convicted sex offenders. *See Ferguson*, 896 N.E.2d at 119-20; *State v. Cook*, 700 N.E.2d 570 (Ohio 1998). However, the Ohio Supreme Court has held that unlike prior amendments, Senate Bill 10, which became effective January 1, 2008, imposes requirements based on the federal Adam Walsh Act (AWA) that are punitive and cannot be applied retroactively to a person whose crime was committed before the bill's enactment. *See State v. Williams*, 952 N.E.2d 1108, 1110 (Ohio 2011); *see also State v. Howard*, 983 N.E.2d 341, 345 (Ohio 2012) (pointing out that in light of its decision in *Williams*, "Ohio has, in effect, separate statutory schemes governing sex offenders depending on when they committed their underlying offense. Those who committed their offense before the effective date of the AWA are subject to the provisions of Megan's Law; those who committed their offense after the effective date of the AWA are subject to the AWA."). The Ohio Supreme Court has also severed the reclassification procedures contained in the AWA from Ohio's statute on the ground that the application of those provisions to sex offenders previously adjudicated in accordance with the classification, registration, and community-notification provisions contained in Megan's Law violates the separation-of-powers doctrine. *See Howard*, 983 N.E.2d at 345 (discussing *State v. Bodyke*, 933 N.E.2d 753 (Ohio 2010)).

2 According to a memorandum issued on August 2, 2011 by a BOSC record supervisor, plaintiff's maximum sentence date is February 4, 2020. (*See* Doc. 1, at PAGEID#: 184).

action in the form of a civil complaint for damages and injunctive relief against the defendants and a habeas corpus petition to the extent he seeks immediate or speedier release from his prison sentences in Case Nos. B951322 and B9502232.  (*See id.*, at PAGEID#: 29, 37).  The undersigned will address the two types of actions separately.

## A.   Habeas Petition

The portion of plaintiff's pleading entitled "Petition For Writ Of Habeas Corpus" is 30 pages long and contains so many rambling complaints covering a range of issues that it is difficult to ascertain whether plaintiff is seeking to challenge his convictions and sentences in Case Nos. B951322 and B9502232, the execution of his sentences by state correctional or parole authorities, and/or his current confinement in prison on the basis of a variety of other reasons. (*See* Doc. 1, at PAGEID#: 37-67).   Rule 2(e) of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[a] petitioner who seeks relief from judgments of more than one state court must file a separate petition covering the judgment or judgments of each court."  In addition, Habeas Rule 2(c) provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground."  *See also Flood v. Phillips*, 90 F. App'x 108, 113 (6th Cir. 2004).  Habeas Rule 2(c) is even "more demanding" than Fed. R. Civ. P. 8(a), which requires in "ordinary civil proceedings" that the complaint "provide 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also McFarland v. Scott*, 512 U.S. 849, 860 (1994) (O'Connor, J., concurring in part) ("the habeas petition, unlike a complaint, must allege the factual underpinnings of the petitioner's claims").  "'Notice' pleading is insufficient in the

6

habeas context, as the petitioner is expected to state facts that point to a real possibility of constitutional error." *Johnson v. Sheldon*, No. 3:14cv1675, 2015 WL 3650695, at *2 (N.D. Ohio June 11, 2015) (citing *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977); *Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002)); *see also* Advisory Committee Note to Rule 4, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254 (citing *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

Dismissal under Habeas Rule 2(c) is appropriate in cases such as this where the petition and accompanying documents contain "so many unintelligible and conclusory allegations and statements" that it is impossible for the Court to determine "the exact errors of fact or law" that have been raised for adjudication or, for that matter, the particular state-court judgment to which they pertain. *Cf. Bakalov v. Utah*, 4 F. App'x 654, 657 (10th Cir. 2001) (affirming dismissal of "clearly deficient" *pro se* habeas petition which, despite its volume, failed "to provide the information necessary to inform the district court whether relief [was] available, or to allow the respondent to file a meaningful and responsive pleading," and which contained "so many unintelligible and conclusory allegations and statements" that it was "impossible to ascertain the exact errors of fact or law raised for the court's disposition"); *Tinsley v. Beasley*, No. 5:11cv13289, 2011 WL 3497306, at *2 (E.D. Mich. Aug. 10, 2011) (summarily dismissing a habeas petition containing "so many unintelligible and conclusory allegations and statements" that it was "impossible for the Court to determine the exact errors of fact or law raised for the Court's disposition"); *see also Jackson v. Albany Appeal Bureau Unit*, 442 F.3d 51, 54 (2nd Cir. 2006) (affirming dismissal under Habeas Rule 2(c) of an amended petition "found to be unintelligible"); *Edwards v. Johns,* 450 F.Supp.2d 755, 756 (E.D. Mich. 2006) (dismissing

habeas petition where "much, if not all, of the . . . petition [was] illegible and unintelligible");

*Dunlap v. Superior Court of San Bernardino*, No. 1:15cv837, 2015 WL 3542827, at *1 (D.D.C. June 5, 2015) (dismissing habeas petition "comprised of incoherent statements" that came "nowhere near satisfying the . . . pleading standard" set forth in Habeas Rule 2(c)); *Smith v. Suzuki*, No. CV 15-2360-RGK (AS), 2015 WL 1756839, at *2-3 (C.D. Cal. Apr. 15, 2015) (dismissing for lack of jurisdiction a habeas petition that was "unintelligible and vague and [did] not contain any allegation that petitioner [was] in state custody pursuant to an adjudication that was contrary to, or involved an unreasonable application of, clearly established federal law or [was] in custody in violation of the laws of the Constitution or laws or treaties of the United States"); *Creech v. Taylor*, Civ. Act. No. 13-165-HRW, 2013 WL 6044359, at *3 (E.D. Ky. Nov. 14, 2013) (dismissing habeas petition containing only "[c]onclusory allegations with no accompanying evidentiary support"); *Edwards v. Oklahoma*, No. CIV-08-995-R, 2009 WL 73873, at *1 & n.8 (W.D. Okla. Jan. 8, 2009) (dismissing habeas petition naming the wrong respondent because the petition, which consisted of "an unintelligible collection of papers referring to unrelated subjects," was subject to "dismissal even if the proper respondent had been named"), *appeal dismissed*, 327 F. App'x 75 (10th Cir. 2009).

Accordingly, in sum, it is **RECOMMENDED** that the habeas petition portion of plaintiff's pleading be **DISMISSED** without prejudice to filing a petition or petitions in accordance with requirements set forth in Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.[3]

---

3 It is noted that habeas petitions are not subject to the Prison Litigation Reform Act (PLRA), and are instead subject to requirements set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), which governs collateral attacks on confinement. The PLRA and AEDPA contain different requirements for incarcerated litigants. For example, the filing fee for an action seeking a writ of habeas corpus is $5, whereas the filing fee for a

## B.  Complaint

In the complaint portion of the pleading, plaintiff alleges ten causes of action.  (*See* Doc. 1, at PAGEID#: 29-36).  In Count 1, plaintiff claims that on September 26, 2001, various ODRC, OAPA and CCI defendants conspired to "conduct ex post facto deprivation of [his] case law civil rights"; "falsely imprison[ed]" him "beyond his earned acquired October 1, 2001 release date"; and tampered with his records, misrepresenting him "as dangerous, and the worst of the worst." (*Id.*, at PAGEID#: 29-30).  It also appears that plaintiff is bringing claims generally challenging prison conditions, the validity of his guilty pleas in Case Nos. B951322 and B9502232, the destruction of his "reformed reputation," and invasion of his privacy.  (*See id.*, at PAGEID#: 30).

In Count 2, plaintiff seeks to hold various Ohio Supreme Court justices liable for the majority decision in *State v. Hayden*, 773 N.E.2d 502 (Ohio 2002).[4]  Plaintiff contends the justices conspired "to deprive old law sex offenders of their civil rights." (*Id.*). He also alleges that the decision caused the former Ohio Attorney Generals, certain ODRC and CCI defendants, and the former Hamilton County Sheriff to "unlawfully post[]" his and his parents' "personal information" on the "Sex Offender Registration Notification (ESORN)" website.  (*Id.*).

---

civil complaint is $350.  *See* 28 U.S.C. § 1914(a).  Under the PLRA, if a prisoner is granted pauper status, he is required to eventually pay the full $350 filing fee in installment payments collected over time from his prison account.  *See* 28 U.S.C. § 1915(b).  In contrast, a prisoner granted pauper status in a habeas proceeding is not required to eventually pay the full filing fee.  However, unlike civil complaints, habeas petitions are subject to procedural bars to review, as well as a deferential standard of review, under the AEDPA. In addition, damages are not available as a remedy in a habeas action.

4 In *Hayden*, the defendant was convicted in 1984 for a sexual offense and was classified in 1997 without a hearing as a "sexually oriented offender" in accordance with Ohio's sex offender classification, registration and notification statute, Ohio Rev. Code Chapter 2950, as reenacted in 1997 to incorporate provisions known as "Megan's Law."  *See Hayden*, 773 N.E.2d at 503.  The defendant appealed the classification order, arguing that his constitutional rights of confrontation and due process had been violated. *See id.*  However, the Ohio Supreme Court concluded in the majority decision issued on August 28, 2002 that (1) the order did not violate any constitutional right of confrontation because Ohio Rev. Code Chapter 2950 "is civil, not punitive, in nature"; and (2) the trial court was not required as a matter of due process to conduct a hearing for a "sexually oriented offender" designation.  *Id.* at 503, 506.

9

In Count 3, plaintiff brings a claim against the former Ohio Attorney Generals, certain ODRC, OAPA and CCI defendants, a Hamilton County Common Pleas Court judge, the former Hamilton County Sheriff, the defendant Hamilton County prosecuting attorneys, and the defendant Hamilton County public defender. (*See id.*, at PAGEID#: 31). The claim stems from "Sexual Predator Sentencing Risk Assessment Proceedings" held in Case No. SP008368, which resulted in the issuance of entries by the Hamilton County Common Pleas Court judge on October 29, 2008 classifying plaintiff as a "sexually oriented offender" and ordering that plaintiff was subject to "the registration requirements, as set out in R.C. 2950.04, R.C. 2950.05, and R.C. 2950.06" but not "the community notification provisions under R.C. 2950.11." (*Id.*, at PAGEID#: 31, 111-12). Plaintiff alleges the entries "[r]etroactively" subjected him to "unwarranted punitive onerous burdens, duties obligations and liabilities of ex post fact new law post-release in-person-reporting (every day if homeless) on the . . . ESORN registry." (*Id.*, at PAGEID#: 31). He also alleges that he was "unlawfully" moved from CCI, a medium security prison, to the "maximum security" Hamilton County Justice Center (HCJC), where he was confined for 72 days. (*Id.*). Plaintiff claims that the move caused him to miss a filing deadline for his motion contesting reclassification, which was dismissed as untimely by the Ross County Common Pleas Court on December 12, 2008. (*Id.*, at PAGEID#: 31-32). The dismissal was affirmed on December 8, 2009 by the Ohio Court of Appeals, Fourth Appellate District, and plaintiff's discretionary appeal to the Ohio Supreme Court was denied on March 10, 2010. (*Id.*, at PAGEID#: 32).

In Count 4, plaintiff asserts a claim against the Ohio Supreme Court justices and judges on the "Hamilton County First District Court of Appeals." (*Id.*). Plaintiff alleges the defendants

10

conspired to deprive him of "his case law civil rights remedy." (*Id.*).  The claim stems from the First District Court of Appeals' dismissal of his direct appeal on January 29, 2009 and the Ohio Supreme Court's denial of a discretionary appeal on June 3, 2009.  (*Id.*).

In Count 5, plaintiff brings a claim against Governor Kasich and former Governor Strickland, certain ODRC, OAPA and CCI defendants, and the defendant school principals and superintendent.  (*Id.*).  Plaintiff alleges the defendants conspired against him by "[c]ompletely abandoning the management of DeNoma's old law case, refusing to acknowledge DeNoma's accomplished case law rehabilitation, denying DeNoma's eligibility for . . . Certificate of Achievement and Employability,[5] unreasonably denying DeNoma reint[e]gration[,] [p]unishing DeNoma for reporting being assaulted, writing false conduct reports, confining DeNoma in segregation, subjecting DeNoma to progressive punishments[,] [d]enying resolutions for DeNoma's many grievances, conducting retaliation for DeNoma's use of the grievance procedure and denying DeNoma use of the grievance procedure, [d]enying DeNoma timely access to the court, unreasonably delaying DeNoma's incoming and outgoing legal mail, and administratively transferring DeNoma farther away from his ailing elderly parents." (*Id.*, at PAGEID#:  32-33).

In Count 6, plaintiff alleges a Hamilton County Common Pleas Court judge, the "Hamilton County First District Court of Appeals" and the Ohio Supreme Court conspired to subject him "to unconstitutional ex post facto attainder," to deprive him of "his civil rights" and to deny him "any remedy of law."  (*Id.*, at PAGEID#: 33).  The claim stems from the Common Pleas Court judge's September 6, 2011 dismissal of his "Malicious Prosecution/Libel civil suit

---

5 It appears from exhibits attached to the complaint that plaintiff was notified on October 11, 2013 of the denial of his application for the achievement and employability certificate.  (*See* Doc. 1, at PAGEID#: 113).

alleging corrupt activity," as well as the Ohio Court of Appeals' May 16, 2012 dismissal of his direct appeal and the Ohio Supreme Court's September 26, 2012 dismissal of his discretionary appeal in that matter.  (*See id.,* at PAGEID#: 28, 33).

In Count 7, plaintiff brings a claim against the defendant school principals and various ODRC, OAPA and SCC defendants based on the allegation that they "colluded in continuing a vendetta of extortion, harassment and intimidation against [him]."  (*Id.*, at PAGEID#: 33-34). Plaintiff states that the defendants denied him "continuing vocational reentry and reintegration programs," deleted "significant accomplished rehabilitation programs from [his] Institutional Reentry Accountability Plan," abandoned "the management of [his] old law case," endangered and misrepresented him "as a snitch and vexatious grievance filer," subjected him "to progressive punishment for reporting being assaulted," confined him in segregation "without cause," denied him "resolutions for his grievances," and interfered with and delayed his legal mail in retaliation for his use of the grievance procedure.  (*Id.*, at PAGEID#: 34).

In Count 8, plaintiff alleges that various ODRC defendants, SCC's Warden, the "Fourth District Court of Appeals," and the Ohio Attorney General and Assistant Ohio Attorney General conspired to deprive him of his civil rights, deny him "any remedy of law," subject him "to ex post facto attainder" and continue his "false imprisonment."  (*Id.*).  The allegation stems from the dismissal on May 9, 2013 of a state habeas petition without a hearing. (*See id.*).

In Count 9, plaintiff claims various ODRC, OAPA and LeCI defendants conspired to continue "an arbitrary vindictive vendetta of cruel and unusual punishment" against him.  (*Id.*, at PAGEID#: 34-35).  Plaintiff alleges the defendants refused "to administer DeNoma's case law diminution of sentence"; denied "DeNoma reintegration"; abandoned "the management of

DeNoma's old law case"; unreasonably denied "DeNoma's eligibility for . . . Certificate of

Achievement and Employability"; punished "DeNoma for reporting being assaulted"; conducted

"extortion, harassment and intimidation against DeNoma" through "threats, false conduct

reports;" misrepresented "DeNoma as a snitch and vexatious grievance writer"; denied "DeNoma

resolution for his grievance complaints"; and interfered with and delayed "DeNoma's outgoing

legal mail, in retaliation for DeNoma's use of the grievance procedure."  (*Id.*, at PAGEID#: 35).

Finally, in Count 10, plaintiff alleges that a Hamilton County Common Pleas Court

judge, three Hamilton County prosecuting attorneys, the "Hamilton County First District Court

of Appeals" and the Ohio Supreme Court conspired to subject him to "cruel and unusual

punishment" and "continued false imprisonment and ex post facto attainder."  (*Id.*).  The claim

stems from the Common Pleas Court judge's July 2014 dismissal of his Ohio R. Crim. P. 32.1

post-conviction motion "to correct manifest injustice" without a hearing, the First District Court

of Appeals' October 29, 2014 denial of his applications for reopening and delayed appeals, and

the Ohio Supreme Court's January 28, 2015 denial of his discretionary appeal in that matter.

(*See id.*, at PAGEID#: 35-36).

Plaintiff's complaint is, for the most part, subject to dismissal at the screening stage.  As

a threshold matter, although listed as defendants, neither Hamilton County nor the Hamilton

County Commissioners are mentioned in the substance of plaintiff's complaint. In the absence of

any allegations against those named defendants, they should be dismissed as parties to the

complaint.  Furthermore, as discussed below, although plaintiff mentions the remaining

defendants in the substance of the complaint, except for one limited claim alleged in Count 3, his

allegations in each of the ten counts are insufficient to state a cognizable federal claim for this

Court's jurisdiction to lie under 28 U.S.C. § 1331.

**Count 1:**

Count 1 is subject to dismissal for a variety of reasons.  First, to the extent the cause of action is based on conduct by certain defendants that occurred fourteen years ago, in September 2001, plaintiff's claim is time-barred.  *See, e.g., Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (holding that the "appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual"); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007) (and Supreme Court cases cited therein) (holding that the statute of limitations governing § 1983 actions "is that which the State provides for personal-injury torts").  Although the statute-of-limitations is an affirmative defense, when it appears clear on initial screening of the complaint that the action is time-barred, the complaint may be dismissed for failure to state a claim upon which relief may be granted.  *See Jones v. Bock,* 549 U.S. 199, 215 (2007).  *Cf. Fraley v. Ohio Gallia Cnty.*, No. 97-3564, 1998 WL 789385, at *1-2 (6th Cir. Oct. 30, 1998) (holding that the district court "properly dismissed" the *pro se* plaintiff's § 1983 civil rights claims under 28 U.S.C. § 1915(e)(2)(B) because the complaint was filed years after Ohio's two-year statute of limitations had expired); *Anson v. Corr. Corp. of America,* No. 4:12cv357, 2012 WL 2862882, at *2-3 (N.D. Ohio July 11, 2012) (in *sua sponte* dismissing complaint under 28 U.S.C. § 1915(e), the court reasoned in part that the plaintiff's *Bivens* claims asserted "six years after the events upon which they are based occurred" were time-barred under Ohio's two-year statute of limitations for bodily injury), *aff'd*, 529 F. App'x 558 (6th Cir. 2013) (per curiam).

Second, to the extent plaintiff is claiming that he was improperly denied parole in 2001

14

from the 10-to-25 year prison sentence imposed in April 1995, he fails to state a claim upon which relief may be granted.  As the Sixth Circuit has stated, "[b]ecause the granting of parole under the Ohio penal statutes is 'purely discretionary,' a convicted person has no legitimate claim of entitlement to parole before the expiration of a valid sentence of imprisonment—and thus no liberty interest in being paroled—even if the parole board has approved the prisoner's release on parole on or after a specified date."  *See Bell v. Anderson*, 301 F. App'x 459, 461 (6th Cir. 2008) (per curiam) (quoting *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235-36 (6th Cir. 1991) (internal citation omitted)).

Courts have disagreed as to whether "totally arbitrary parole decisions . . . in the absence of an identifiable liberty interest in parole release" can amount to a substantive due-process violation.  *Compare id.* at 461-62 (pointing out that the Sixth Circuit has not adopted the reasoning of Third and Eighth Circuit decisions suggesting or holding that due process concerns are implicated in that circumstance; and citing conflicting decisions by the D.C., Fifth and Tenth Circuits); *Pettigrew v. Zavaras*, 574 F. App'x 801, 812-13 (10th Cir. 2014) (and cases cited therein) (reasoning that "[i]n light of the prevailing unfavorable view of [the Third Circuit's ruling in *Block v. Potter*, 631 F.2d 233, 236 (3rd Cir. 1980), that the denial of parole may give rise to a substantive due-process claim even in the absence of a liberty interest in parole], and in the absence of any cogent arguments from [the plaintiff], we are disinclined to adopt *Block*'s substantive due-process reasoning") *with Jergens v. Ohio Dep't of Rehab. & Corr. Adult Parole Auth.,* 492 F. App'x 567, 571 n.5 (6th Cir. 2012) (noting that neither the Sixth Circuit's decision in *Bell* "nor any binding circuit precedent . . . forecloses the possibility that, in an appropriate case, a parole board's reliance on unconstitutional factors—or even on false information in the

15

parole file—could constitute a due-process violation"); *Kinney v. Mohr*, No. 2:13cv1229, 2015 WL 1197812, at *4 (S.D. Ohio Mar. 16, 2015) (Marbley, J.) (denying the defendants' motion to dismiss an Ohio prisoner's civil rights complaint, which alleged that the Ohio correctional officials "knowingly sent false and biased information to the [state] legislature in a report explaining why [the prisoner] was not suitable for parole review").  However, even assuming, without deciding, that plaintiff can bring a due process claim based on allegations of a wholly arbitrary decision by state authorities regarding parole eligibility, the September 26, 2001 parole board decision attached to and included as part of the complaint merely reflects a decision by the board, in the exercise of its discretionary authority, that parole outside the sentence range would be inappropriate given that there were "two victims in this case, both under the age of 16."  (*See* Doc. 1, at PAGEID#: 101).  In the absence of specific allegations of "egregiously arbitrary actions" by any of the defendants named in Count 1, plaintiff has not met the "exceptionally high" standard required to state a substantive due process claim.  *Cf. Bell*, 301 F. App'x at 462-63 (holding that the denial of parole "premised on the parole board's concern that a contrary decision would 'demean the seriousness of the offense' ..., an altogether routine call by a parole board exercising discretionary authority," did not qualify as an "arbitrary and capricious" decision that satisfies the "shock the conscience" standard for a due process violation).

Third, to the extent plaintiff has alleged that the defendants named in Count 1 were involved in a conspiracy against him, he fails to state a plausible claim for relief under 42 U.S.C. § 1983 or § 1985 in the absence of specific factual allegations to support that conclusory assertion.  *See Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)) ("It is 'well-settled that conspiracy claims must be pled with

some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim.'"); *see also Anderson v. Cnty. of Hamilton*, 780 F. Supp.2d 635, 643-44, 652 (S.D. Ohio 2011) (Barrett, J.; Hogan, M.J.) (and cases cited therein) (dismissing conspiracy claims in the absence of factual allegations to support the inference that a single plan existed, that the alleged co-conspirators shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy).

Fourth, to the extent that plaintiff seeks to challenge the validity of his guilty pleas in the Hamilton County Court of Common Pleas cases that resulted in his 10-to-25 year prison sentence, the complaint count is barred from review by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). *See also Cummings v. City of Akron*, 418 F.3d 676, 682-83 (6th Cir. 2005); *Schilling v. White,* 58 F.3d 1081, 1085-86 (6th Cir. 1995); *cf. Edwards v. Balisok,* 520 U.S. 641, 643 (1997).[6]

In *Heck*, the Supreme Court held that a § 1983 civil rights action seeking monetary relief on the basis of an allegedly unconstitutional conviction or sentence will not lie unless the plaintiff has already succeeded in having the conviction or sentence invalidated. *Heck*, 512 U.S. at 486-87. Under *Heck*, when a successful § 1983 civil rights action for damages would necessarily imply the invalidity of a plaintiff's conviction or sentence, the complaint must be dismissed unless the plaintiff demonstrates that the decision resulting in his confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of

_____

[6] It is noted that because plaintiff's convictions have not been invalidated, plaintiff is also unable to argue that his allegations give rise to a claim of malicious prosecution under 42 U.S.C. § 1983. As the Supreme Court pointed out in *Heck*, 512 U.S. at 484, "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *See also Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) ("To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove [that] . . . the criminal proceeding [was] resolved in the plaintiff's favor."); *Fisher v. Secoy*, No. 2:12cv734, 2013 WL 5297216, at *3 (S.D. Ohio Sept. 19, 2013) (quoting same language in *Sykes*, 625 F.3d at 308-09).

a writ of habeas corpus under 28 U.S.C. § 2254. *Heck*, 512 U.S. at 486-87; *see also Edwards*, 520 U.S. at 643. The same principle enunciated in *Heck* with respect to § 1983 claims also applies to conspiracy claims brought under 42 U.S.C. § 1985. *See Lanier v. Bryant,* 332 F.3d 999, 1005-06 (6th Cir. 2003); *Sexton v. Lee*, No. 1:14cv98, 2014 WL 1267001, at *1, *5 (S.D. Ohio Mar. 26, 2014) (Black, J.; Bowman, M.J.) (citing *Mason v. Stacey,* No. 4:07cv43, 2009 WL 803107, at *7 (E.D. Tenn. Mar. 25, 2009) (and cases cited therein)). Here, it is clear from the face of the complaint and attached exhibits that plaintiff's convictions and sentences still stand and have not been overturned or invalidated in accordance with *Heck*. Therefore, the claim is subject to dismissal at the screening stage. *Cf. Henry v. Allen,* No. 1:13cv701, 2013 WL 9839229, at *6 (S.D. Ohio Dec. 20, 2013) (Bowman, M.J.) (Report & Recommendation) (recommending screening dismissal of § 1983 civil rights action seeking money damages on the basis of an allegedly unconstitutional conviction or sentence), *adopted*, 2014 WL 5475275 (S.D. Ohio Oct. 29, 2014) (Spiegel, J.).

Finally, to the extent that plaintiff seeks to bring other general claims without any supporting factual allegations against the defendants named in Count 1, his allegations are simply too conclusory to give rise to a cognizable claim of federal constitutional dimension. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555, 557; *see also Erickson*, 551 U.S. at 93.

**Count 2:**

Plaintiff has failed to state a claim for relief in Count 2 to the extent he seeks to hold certain Ohio Supreme Court justices and state officials liable under 42 U.S.C. § 1983 for the Ohio Supreme Court's 2002 majority decision in *Hayden*. (*See* Doc. 1, at PAGEID#: 30). First, similarly to Count 1, the cause of action challenging a decision rendered thirteen years ago, in

18

2002, is time-barred.  *See, e.g., Browning*, 869 F.2d at 992.

Second, the state judges are entitled to absolute immunity for acts committed in the performance of their judicial duties.  *See Pierson v. Ray,* 386 U.S. 547 (1967); *Barrett v. Harrington*, 130 F.3d 246, 254-55 (6th Cir. 1997).  The Supreme Court has made it clear that the immunity offered judicial officers in the performance of judicial duties is not overcome by allegations that they acted in "bad faith," maliciously, corruptly or even "in excess of . . . authority."  *See Mireles v. Waco*, 502 U.S. 9, 11, 13 (1991) (per curiam) (and Supreme Court cases cited therein).  Judges retain absolute immunity from liability as long as they are performing judicial acts and have jurisdiction over the subject matter giving rise to the suit against them.  *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978); *see also Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001); *Barrett*, 130 F.3d at 255 (quoting *Mireles*, 502 U.S. at 11-12).  Judicial immunity "extends to requests for injunctive or other forms of equitable relief as well as to claims for damages."  *Ward v. United States Dist. Court for the Western Dist. of Tenn.*, No. 14-2707-T-DKV, 2015 WL 137204, at *1 (W.D. Tenn. Jan. 8, 2015) (citing *Kipen v. Lawson*, 57 F. App'x 691, 691 (6th Cir. 2003); *Newsome v. Merz*, 17 F. App'x 343, 345 (6th Cir. 2001)); *see also Mireles*, 502 U.S. at 11 ("judicial immunity is an immunity from suit, not just from the ultimate assessment of damages"); *Easterling v. Rudduck*, No. 1:14cv876, 2015 WL 1567844, at *5 (S.D. Ohio Apr. 6, 2015) (Litkovitz, M.J.) (Report & Recommendation) ("That plaintiff seeks only equitable or injunctive relief has no bearing on the" dismissal of a complaint against a state judge entitled to absolute immunity from suit), *adopted*, 2015 WL 2452437 (S.D. Ohio May 21, 2015) (Dlott, J.).

Here, it is clear from the face of plaintiff's pleadings that his allegations relate entirely to

19

the Ohio Supreme Court justices' performance of their judicial duties in deciding the *Hayden* case, a matter over which the state's highest court had jurisdiction to adjudicate.  *Cf. Barrett*, 130 F.3d at 255 (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988)) ("The application of judicial immunity is simple and non-controversial when applied to 'paradigmatic judicial acts,' or acts of actual adjudication, i.e., acts involved in resolving disputes between parties who have invoked the jurisdiction of the court."); *Easterling*, *supra*, 2015 WL 1567844, at *4-5 (holding that complaint was subject to dismissal for failure to state a claim because the plaintiff's allegations against the Ohio common pleas court judge were based entirely on actions taken in the judge's judicial capacity in deciding that the plaintiff was a "vexatious litigator" under Ohio law). Therefore, they are entitled to absolute immunity from suit.

Furthermore, to the extent that plaintiff has generally alleged that the justices were involved in a conspiracy "to deprive old law sex offenders of their civil rights," it is well-settled in the Sixth Circuit that conspiracy claims must be pleaded with "with some degree of specificity, and vague and conclusory allegations unsupported by material facts are not sufficient to state a claim." *Hamilton v. City of Romulus,* 409 F. App'x 826, 835 (6th Cir. 2010); *see also Moldowan v. City of Warren,* 578 F.3d 351, 395 (6th Cir. 2009).  Here, like the conspiracy claim alleged in Count 1, plaintiff's vague, unsubstantiated and conclusory allegation of conspiracy lacks the requisite specificity to state a cognizable claim under 42 U.S.C. § 1983 or §1985.

 Finally, plaintiff has not alleged any facts in Count 2 to support his conclusory claim of impropriety by the various other state officials who purportedly posted "personal information" about him and his parents on ESORN because of the Ohio Supreme Court's *Hayden* decision.  In any event, plaintiff's general assertions fail to give rise to concerns that those defendants acted

other than in their official capacity in following the Ohio Supreme Court's mandate.  Therefore, the Eleventh Amendment bars plaintiff's damages claim against those defendants.  *See, e.g., Smith-El v. Steward,* 33 F. App'x 714, 716 (6th Cir. 2002) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989)) (holding that a prisoner's § 1983 complaint for damages against a  prison official in his official capacity was barred by the Eleventh Amendment); *Bennington v. DeWine*, No. 1:14cv688, 2015 WL 1914318, at *3 (S.D. Ohio Apr. 27, 2015) (Litkovitz, M.J.) (Report & Recommendation) (and cases cited therein) (granting the defendants' motion to dismiss a § 1983 "official capacity" complaint against Ohio's Attorney General), *adopted*, 2015 WL 2452623 (S.D. Ohio May 21, 2015) (Dlott, J.); *Henry v. Allen*, No. 1:13cv701, 2013 WL 9839229, at *4 (S.D. Ohio Dec. 20, 2013) (Bowman, M.J.) (Report & Recommendation) (citing *Will*, 491 U.S. at 70-71; *Looker v. Ohio*, No. 97-3490, 1998 WL 808369, at *1 (6th Cir. Nov. 9, 1998); *Harmon v. Hamilton Cnty. Court of Common Pleas*, 83 F. App'x 766, 768 (6th Cir. 2003)) (dismissing a § 1983 complaint for damages against the State of Ohio at the screening stage because the State "is not a 'person' within the meaning of § 1983 and, in any event, the Eleventh Amendment precludes plaintiff from recovering damages from the State in a § 1983 action"), *adopted*, 2014 WL 5475275 (S.D. Ohio Oct. 29, 2014) (Spiegel, J.).  *Cf. Hurst v. Ohio Gen. Assembly,* No. 2:14cv2594, 2015 WL 401250, at *3 (S.D. Ohio Jan. 28, 2015) (Kemp, M.J.) (Report & Recommendation) (and cases cited therein), *adopted*, 2015 WL 1291152 (S.D. Ohio Mar. 20, 2015) (Sargus, J.).

**Count 3:**

Count 3 of the complaint is subject to dismissal except to the extent that plaintiff is allowed to proceed at this juncture only with a limited claim against the Ohio Attorney General and ODRC Director in their official capacity based on the allegation that plaintiff's constitutional

rights have been and continue to be violated by the enforcement of certain registration provisions contained in the 2007 amendment of Ohio's sex offender registration statute as applied retroactively to him in accordance with the trial court's rulings on October 29, 2008 in Case No. SP008368. *Cf. Doe v. DeWine*, _ F. Supp.3d _, No. 1:12cv846, 2015 WL 1719068 (S.D. Ohio Apr. 15, 2015) (Dlott, J.) (denying motion to dismiss official-capacity claim against state officials stemming from the retroactive enforcement of amended provisions in Ohio's sex offender registration and notification statute against the plaintiff previously adjudicated to be a "sexual predator"); *see also supra* pp. 4-5 n.1; *State v. Howard*, 983 N.E.2d 341, 345 (Ohio 2012) (citing *State v. Williams*, 952 N.E.2d 1108, 1110 (Ohio 2011); *State v. Bodyke*, 933 N.E.2d 753 (Ohio 2010)).[7] However, all other allegations in Count 3 fail to state a claim upon which relief may be granted by this Court.

First, this Court lacks subject matter jurisdiction to consider plaintiff's claim challenging the state-court proceedings that resulted in the trial judge's rulings in 2008 reclassifying plaintiff as a "sexually oriented offender" subject to certain registration requirements. Under the *Rooker-Feldman* doctrine established by the Supreme Court in two cases, federal district courts are prevented "from exercising jurisdiction over a claim alleging error in a state court decision." *Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)) (quoting

―――――――――――――――

[7] Although plaintiff was reclassified under the 2007 amendment seven years ago, in October 2008, an argument can be made that an exception to the statute-of-limitations bar to review exists to the extent that plaintiff can claim his reclassification as a "sexually oriented offender" remains in effect as an alleged "continuing" violation of his constitutional rights. *Cf. Walker v. O'Brien*, No. 2:08cv523, 2009 WL 2780158, at *2-3 (S.D. Ohio Aug. 26, 2009) (Report & Recommendation) (rejecting the plaintiff's argument that his claim challenging his 1998 sex offender classification was not time-barred under "the theory that the alleged constitutional violation is continuing" or resurrected by his reclassification in 2007 because the reclassification "served to supersede the earlier classification, thereby rendering moot the claim sought to be asserted" by the plaintiff), *adopted*, 2009 WL 3063374 (S.D. Ohio Sept. 18, 2009).

*Luber v. Sprague*, 90 F. App'x 908, 910 (6th Cir. 2004)); *see also Buoscio v. Oborn*, No. 5:10cv533, 2010 WL 1463447, at *1 (N.D. Ohio Apr. 12, 2010) ("This Court does not have jurisdiction over challenges to state court decisions even if those challenges allege that the state court's action was unconstitutional."). The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Coleman v. Governor of Michigan*, 413 F. App'x 866, 870 (6th Cir. 2011) (per curiam) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The district court is barred by the *Rooker-Feldman* doctrine "from exercising jurisdiction where the claim is a specific grievance that the law was invalidly or unconstitutionally applied in plaintiff's particular case, rather than a general constitutional challenge to the governing state law." *Buoscio*, *supra*, 2010 WL 1463447, at *1 (citing *Coles v. Granville*, 448 F.3d 853, 857-59 (6th Cir. 2006); *Tropf v. Fidelity Nat. Title Ins. Co.*, 289 F.3d 929, 937 (6th Cir. 2002)). Here, plaintiff's claim is based on the specific grievance that the law was invalidly or unconstitutionally applied in his particular case. As such, this Court lacks jurisdiction over the claim, which would require a finding that the state trial court erred in reclassifying him as a "sexually oriented offender" in 2008. *Cf. Carter v. Burns,* 524 F.3d 796, 798-99 (6th Cir. 2008) (holding that the *Rooker-Feldman* doctrine barred the plaintiff's claim because the alleged injury was "an injury from . . . prior state-court determinations"); *Howard v. Whitbeck*, 382 F.3d 633, 641 (6th Cir. 2004) (holding that the *Rooker-Feldman* doctrine applied to bar review of a claim that would undermine an existing state-court judgment regarding waiver of fee payments); *Rowls v. Weaver*, 24 F. App'x 453, 455-56 (6th Cir. 2001) (holding that dismissal of a complaint was

proper under the *Rooker-Feldman* doctrine where the plaintiff raised claims that were "inextricably intertwined" with a criminal case previously litigated and decided in state court).

In any event, to the extent that plaintiff has presented claims that are not barred by the *Rooker-Feldman* doctrine, as discussed above with respect to Count 2, the Hamilton County Common Pleas Court judge is entitled to absolute immunity from suit for his performance of judicial duties in the challenged court proceedings. *Cf. Hurst v. Ohio Gen. Assembly,* No. 2:14cv2594, 2015 WL 401250, at *4 (S.D. Ohio Jan. 28, 2015) (Kemp, M.J.) (Report & Recommendation) (holding that judges responsible for rulings in sex offender classification proceedings were "entitled to absolute immunity from civil liability regardless of the consequences which follow from their judicial acts"), *adopted*, 2014 WL 1291152 (S.D. Ohio Mar. 20, 2015) (Sargus, J.). Similarly, plaintiff's claim against the prosecuting attorneys for their role in the proceedings is barred because "prosecutors have immunity for acts taken in their capacity as prosecutors." *See id.* (and cases cited therein). *Cf. Henry v. Allen,* No. 1:13cv701, 2013 WL 9839229, at *3 (S.D. Ohio Dec. 20, 2013) (Bowman, M.J.) (Report & Recommendation) (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 340-43 (2009), *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), and *Mireles v. Waco*, 502 U.S. 9, 9-13 (1991) (per curiam), as support for holding that "[b]oth the [Hamilton County] prosecuting attorney and [Hamilton County] Judge . . . should . . . be dismissed because they are absolutely immune from liability in this § 1983 action"), *adopted*, 2014 WL 5475275 (S.D. Ohio Oct. 29, 2014) (Spiegel, J.).

Plaintiff also fails to state a cognizable claim to the extent he seeks to hold the Hamilton County public defender liable for failing to adequately represent him in the 2008 judicial proceedings that resulted in his designation as a "sexually oriented offender." In order to state a

24

viable claim under 42 U.S.C. § 1983, plaintiff must allege facts showing that he was deprived of "a right secured by the United States Constitution or a federal statute by a person who was acting under color of state law." *Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003).  It is well-settled that "a public defender does not qualify as a state actor when engaged in his general representation of a criminal defendant."  *See Georgia v. McCollum*, 505 U.S. 42, 53 (1992) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318-19 (1981)); *see also Pearson v. Horenstein*, 43 F. App'x 777, 778 (6th Cir. 2002) (affirming screening dismissal of complaint against public defender); *Brown v. McCandless*, No. 1:15cv381, 2015 WL 4476955, at *3 (N.D. Ohio July 22, 2015) (and cases cited therein) ("[i]t is firmly established that a defense attorney, regardless of whether he is a public defender or private attorney, is not a state actor for purposes of § 1983"); *Foster v. Ohio*, No. 1:14cv668, 2014 WL 5589016, at *1, *4 (S.D. Ohio Nov. 3, 2014) (Beckwith, J.; Litkovitz, M.J.) (and cases cited therein) (holding that plaintiff's complaint against his attorney was subject to dismissal at screening stage for failure to state a claim under § 1983).

In addition, plaintiff has not stated a viable claim in Count 3 against the OAPA and CCI defendants in the absence of any factual allegations that those defendants have had any involvement in the enforcement of the registration requirements contained in the 2007 amendments to Ohio Rev. Code Chapter 2950 against plaintiff.   Plaintiff has also failed to state a viable claim to the extent that he seeks to hold the former Ohio Attorney Generals and certain ODRC defendants liable in their individual capacity.  Plaintiff has not alleged any facts to suggest that those defendants acted outside their official capacity to the extent that any of them may have been involved in enforcing the state court's rulings in Case No. SP008368.[8]

---

8 As discussed above, however, plaintiff may proceed with an official-capacity claim against the current Ohio Attorney General and ODRC Director, who have also been named as defendants in this lawsuit.

25

Furthermore, as discussed above with respect to Counts 1 and 2, plaintiff's general assertion that the defendants named in Count 3 all conspired to deprive him of his civil rights and to continue his "false imprisonment" is simply too conclusory and lacks the requisite specificity to state a cognizable claim under 42 U.S.C. § 1983 or §1985. *See Hamilton v. City of Romulus,* 409 F. App'x 826, 835 (6th Cir. 2010); *see also Moldowan v. City of Warren,* 578 F.3d 351, 395 (6th Cir. 2009).

Finally, to the extent that plaintiff alleges the ODRC and CCI defendants named in Count 3 should be held liable for moving him from CCI to HCJC for a 72-day period, he fails to state a claim that implicates federal constitutional concerns.  The Supreme Court has held that the Constitution does not give rise to a liberty interest in avoiding transfer from a "low- to maximum-security prison because '[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.'" *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (quoting *Meachum v. Fano*, 427 U.S. 215, 225 (1976)).  A liberty interest may be implicated when a transfer or change in classification imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 223 (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)).  However, the mere fact that an inmate is transferred to another prison or receives an increase in security classification does not amount to an atypical and significant hardship because prisoners have "no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (2005); *see also Johnson v. Mohr,* No. 2:15cv86, 2015 WL 1526804, at *2 (S.D. Ohio Apr. 3, 2015) (Graham, J.); *Lawson v. Haddon*,

No. 1:09cv551, 2009 WL 2242692, at *4 (W.D. Mich. July 16, 2009) (and cases cited therein).[9]

**Counts 4, 6, 8 and 10:**

In Count 4, plaintiff brings claims against judges on the Ohio Supreme Court and "Hamilton County First District Court of Appeals" based on the dismissals of his appeals by those courts in 2009.  In Count 6, he presents a claim against a Hamilton County Common Pleas Court judge and judges on the "Hamilton County First District Court of Appeals" and Ohio Supreme Court stemming from the September 6, 2011 dismissal of his "Malicious Prosecution/Libel civil suit alleging corrupt activity," as well as the Ohio Court of Appeals' May 16, 2012 dismissal of his direct appeal and the Ohio Supreme Court's September 26, 2012 dismissal of his discretionary appeal in that matter.  In Count 8, plaintiff asserts a claim against various ODRC defendants, SCC's Warden, the "Fourth District Court of Appeals" and the Ohio Attorney General and Assistant Ohio Attorney General based on the May 9, 2013 dismissal of his state habeas petition.  In Count 10, he seeks to hold a Hamilton County Common Pleas Court judge, three Hamilton County prosecuting attorneys, and judges on the "Hamilton County First District Court of Appeals" and the Ohio Supreme Court liable for the July 2014 dismissal of his Ohio R. Crim. P. 32.1 post-conviction motion "to correct manifest injustice" without a hearing, the First District Court of Appeals' October 29, 2014 denial of his applications for reopening and delayed appeals, and the Ohio Supreme Court's January 28, 2015 denial of his discretionary appeal in that matter.

---

9 The undersigned notes that plaintiff may have stated a claim of denial of access to the courts during the 72-day period he was confined at HCJC to the extent that he has alleged that he was prevented from meeting a filing deadline that resulted in the December 2008 dismissal of his motion contesting his reclassification as a "sexually oriented offender" subject to registration requirements set forth in Ohio Rev. Code Chapter 2950.  However, as discussed above with respect to Counts 1 and 2, that claim, which accrued several years before the filing of the instant action, is time-barred under the two-year statute of limitations governing § 1983 complaints. *See, e.g.*, *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989).

The claims alleged in Counts 4, 6, 8 and 10 are subject to dismissal on screening for many of the same reasons discussed above at length in addressing the claims alleged in Counts 1, 2 and 3.  First, plaintiff's claims in Counts 4, 6 and 8 accrued over two years before the filing of the instant action and, therefore, are time-barred.  Second, this Court is barred by the *Rooker-Feldman* doctrine from exercising jurisdiction to consider the claims alleged in Counts 4, 6, 8 and 10 essentially challenging state-court decisions that have been issued against plaintiff over the years.  Third, the state judges named as defendants in Counts 4, 6, 8 and 10, as well as the Hamilton County prosecuting attorneys named as defendants in Count 10, are all entitled to absolute immunity from suit pertaining to the performance of their duties in the challenged state-court proceedings.  Fourth, plaintiff has not alleged any facts in Counts 8 and 10 to support his conclusory claims of impropriety by the various other state officials named as defendants in those counts.  In any event, because plaintiff's general assertions against those individuals fail to give rise to concerns that they acted other than in their official capacity in following decisions made by the state courts, the Eleventh Amendment bars plaintiff's damages claim against those defendants.  Finally, plaintiff's vague, unsubstantiated and conclusory allegations of conspiracy in Counts 4, 6, 8 and 10 lack the requisite specificity to state a cognizable claim under 42 U.S.C. § 1983 or §1985.

**Count 5, 7 and 9:**

Plaintiff's remaining causes of action alleged in Counts 5, 7 and 9 do not state a claim upon which relief may be granted by this Court.  As a threshold matter, in the absence of any supporting factual allegations, the general claims asserted in those counts are subject to dismissal because they constitute nothing "more than . . . unadorned, the-defendant[s]-

28

unlawfully-harmed-me accusation[s]" and do not provide any of the defendants named in those counts with "fair notice" of plaintiff's claims against them and "the grounds upon which [they] rest." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *Erickson*, 551 U.S. at 93.

In any event, because "prisoners have no constitutionally protected interest in prison vocational, rehabilitation, and educational programs," plaintiff has failed to state a cognizable claim to the extent that he has generally asserted in Counts 5, 7 and 9 that he has been denied opportunities to participate in those types of programs while incarcerated in Ohio prisons. *See Colston v. Mickel*, No. 11-14050, 2012 WL 2995473, at *3 (E.D. Mich. June 4, 2012) (Report & Recommendation) (and numerous cases cited therein), *adopted*, 2012 WL 2995472 (E.D. Mich. July 23, 2012); *see also Sykes v. Carl Perkins Rehab. Ctr.*, No. 96-5837, 1997 WL 572893, at *1 (6th Cir. Sept. 1, 1997) (affirming screening dismissal of complaint).  Moreover, as discussed above with respect to Count 1, plaintiff fails to state a claim upon which relief may be granted to the extent he challenges decisions by the OAPA defendants denying him release on parole and, most recently, continuing the matter until plaintiff's completion of the maximum prison term in the sentence range of ten (10) to twenty-five (25) years (*see* Doc. 1, at PAGEID#: 115).  *Cf. Bell v. Anderson*, 301 F. App'x 459, 461 (6th Cir. 2008) (per curiam).

In addition, the mere fact that plaintiff may have been confined in segregation and subjected to disciplinary proceedings at various times during his confinement at CCI, SCC and LeCI is not sufficient to state a cognizable claim for relief under 42 U.S.C. § 1983 in the absence of any factual allegations showing that he has suffered an atypical and significant hardship under *Sandin v. Connor*, 515 U.S. 472, (1995), or that any of the individuals named as defendants in Counts 5, 7 and 9 were specifically involved in retaliatory conduct against him.  *Cf. Harden-Bey*

*v. Rutter*, 524 F.3d 789, 795-76 (6th Cir. 2008); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Similarly, plaintiff's complaint in Count 5 regarding his transfer to another prison located farther from his parents' residence does not implicate constitutional concerns under *Sandin*. *See Wilkinson v. Austin*, 545 U.S. 209, 221-23 (2005); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (2005); *see also Johnson v. Mohr,* No. 2:15cv86, 2015 WL 1526804, at *2 (S.D. Ohio Apr. 3, 2015) (Graham, J.); *Lawson v. Haddon*, No. 1:09cv551, 2009 WL 2242692, at *4 (W.D. Mich. July 16, 2009) (and cases cited therein).

Finally, plaintiff's general complaints in Counts 5, 7 and 9 regarding the alleged denial of the prison grievance process and the handling of his grievances fail to implicate federal constitutional concerns because plaintiff has no right under the Constitution to an effective prison grievance procedure. *See, e.g., Hill v. Warden, Southern Ohio Corr. Facility,* No. 1:12cv63, 2012 WL 1639991, at *2 (S.D. Ohio Mar. 13, 2012) (Litkovitz, M.J.) (Report & Recommendation) (recommending dismissal of portion of complaint complaining about "the failure of prison staff to provide [plaintiff] with inmate grievance forms and other deficiencies in the inmate grievance procedure" because "plaintiff has no federal constitutional right to an effective prison grievance procedure"), *adopted*, 2012 WL 1623565 (S.D. Ohio May 9, 2012) (Weber, J.); *Dearing v. Mahalma,* No. 1:11cv204, 2011 WL 3739029, at *7 (S.D. Ohio Aug. 24, 2011) (Barrett, J.) (holding that the plaintiff's allegations referring to "his dissatisfaction with the . . . investigation of [an] allegedly mishandled letter" through the prison grievance process did not state an actionable claim under 42 U.S.C. § 1983); *Williams v. Harris,* No. 1:11cv362, 2011 WL 3667438, at *3 (S.D. Ohio June 15, 2011) (Litkovitz, M.J.) (Report & Recommendation) (recommending dismissal of complaint against prison official responsible for responding to

30

institutional grievances because the plaintiff had "no constitutional right to an effective grievance procedure"), *adopted*, 2011 WL 3667389 (S.D. Ohio Aug. 22, 2011) (Dlott, J.); *see also Walker v. Michigan Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005) (per curiam) (and cases cited therein); *Argue v. Hofmeyer,* 80 F. App'x 427, 430 (6th Cir. 2003) (and cases cited therein); *Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000).

Accordingly, in sum, upon review of the ten counts alleged in the complaint portion of plaintiff's pleading, the undersigned concludes that the complaint should be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) because plaintiff has failed to state a claim upon which relief may be granted against any of the named defendants, **except** as follows:  out of an abundance of caution and in the absence of briefing by the parties, plaintiff is allowed to proceed at this juncture with a limited claim against the Ohio Attorney General and ODRC Director in their official capacity based on the allegation in Count 3 that plaintiff's constitutional rights have been and continue to be violated by the enforcement of certain registration provisions contained in the 2007 amendment of Ohio's sex offender registration statute as applied retroactively to him.

## IT IS THEREFORE RECOMMENDED THAT:

Except for the limited official-capacity claim alleged in Count 3 against the Ohio Attorney General and ODRC Director, the complaint portion of plaintiff's pleading (Doc. 1, at PAGEID#: 29-36) be **DISMISSED** with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). The habeas petition portion of plaintiff's pleading (Doc. 1, at PAGEID#: 37-67) be **DISMISSED** without prejudice to filing a petition or petitions in accordance with requirements set forth in Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.  The Clerk of Court is **DIRECTED** to provide the plaintiff with a

form petition for federal habeas corpus relief.

**IT IS THEREFORE ORDERED THAT:**

1.  Plaintiff may proceed with a cause of action against defendants Ohio Attorney General Mike DeWine and ODRC Director Gary Mohr in their official capacity based on the allegation in Count 3 that his constitutional rights have been and continue to be violated by the enforcement of certain registration provisions contained in the 2007 amendment of Ohio's sex offender registration statute, as applied retroactively to plaintiff in accordance with the Hamilton County Common Pleas Court's rulings on October 29, 2008 in Case No. SP008368.

The United States Marshal shall serve a copy of the plaintiff's initial pleading screened herein, plaintiff's subsequent motions for judicial notice (Docs. 2-3), summons, the separate Order issued this date granting the plaintiff *in forma pauperis* status, and this Order and Report and Recommendation upon the following defendants as directed by plaintiff, with costs of service to be advanced by the United States:   Ohio Attorney General Mike DeWine and ODRC Director Gary Mohr.

2.  Plaintiff shall serve upon defendants or, if appearance has been entered by counsel, upon defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendants or their counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

3.  Plaintiff shall inform the Court promptly of any changes in his address which may

occur during the pendency of this lawsuit.


*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ANTHONY J. DENOMA,      Case No. 1:15-cv-594
   Plaintiff,

             Dlott, J.
  vs.            Bowman, M.J.

GOVERNOR JOHN R. KASICH, et al.,
   Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc