UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANTHONY J. DENOMA,

    Plaintiff,

  v.

GOVERNOR JOHN R. KASICH, et al.,

    Defendants.

Case No. 1:15-cv-594
Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

**I. Background**

Plaintiff, an inmate at the Madison Correctional Institution in London, Ohio, initiated this lawsuit against more than 100 Defendants on September 15, 2015 by filing a motion for leave to proceed *in forma pauperis* together with a 283-page complaint filed by Plaintiff in five separate "volumes." Plaintiff remains in state custody based upon 1995 convictions in two Hamilton County, Ohio Court of Common Pleas cases, following guilty pleas to criminal charges of gross sexual imposition, rape and felonious sexual penetration relating to Plaintiff's two minor daughters. (Doc. 7 at PageID 373).

Upon initial screening, the undersigned filed a 34-page Order and Report and Recommendation that attempted to decipher Plaintiff's "rambling and often difficult to follow" pleading. (Doc. 8 at 4). Ultimately, the undersigned construed the pleading as an attempt to bring a hybrid action in the form of a civil complaint for damages and injunctive relief, together with a habeas corpus petition seeking an immediate and/or

speedier release from prison. (*Id.* at 6). The Court dismissed the habeas corpus petition for procedural reasons, but without prejudice to re-file a petition in accordance with the requirements of Rule 2 of the Rules Governing Section 2254 Cases. (Doc. 8 at 8).

The Court also dismissed nearly all claims against nearly all Defendants as alleged in the portion of the pleading construed as a civil rights complaint. Only a small portion of what was identified as "Count 3" was not dismissed. The context for that claim arises out of Plaintiff's sex offender registration status.

Ohio has had sex offender registration statutes since 1963. However, Ohio's law "became more complex in 1996 due in large part to New Jersey's 1994 passage of 'Megan's Law.'" *State v. Hayden*, 773 N.E.2d 502, 504 (Ohio 2002). Ohio Rev. Code Chapter 2950 was repealed and reenacted in 1996 to incorporate the Megan's Law registration and notification requirements for sex offenders upon their release from prison. Under the new law, which took effect in 1997, offenders who committed sexually oriented offenses were classified as "sexually oriented offenders," "habitual sex offenders," or "sexual predators. The "sexually oriented offender" category occurred by operation of law. *See Doe v. Dann*, 2008 WL 2390778 at *1 (N.D. Ohio June 9, 2008). However, classifying an offender as a habitual sex offender or a sexual predator usually required a hearing. *Id.* Additional amendments to Chapter 2950 were made in 2003, eliminating an offender's right to have a hearing to prove that he or she was no longer dangerous, if that offender had been classified as a sexual predator. In 2007, the law was again amended, with an effective date of January 1, 2008, to impose requirements based on the federal Adam Walsh Act ("AWA").

2

Plaintiff was convicted in 1995, prior to any of the referenced amendments. His complaint contains several exhibits that pertain to his sex offender classification status throughout the years he has been incarcerated. For example, one exhibit is an August 12, 1997 "Entry Deferring the Scheduling of Sexual Predator Hearing" in Case No. B-952232, in which the trial court stated that "this matter is not ripe for scheduling a sexual predator hearing pursuant to R.C. §2950.09(B), it being earlier than six months prior to this offender's release date," such that the "Ohio Department of Corrections' Sexual Predator finding regarding this offender be forwarded to this court six months prior to this offender's scheduled release date," after which "this court will then schedule the matter for a hearing…." (Doc. 7-1 at PageID 374). A subsequent entry in the same case dated October 5, 2001 by Hamilton County Court of Common Pleas Judge Crush, entitled "Entry Finding Against Adjudication As A Sexual Predator," states that "This matter came before this court for a Sexual Predator determination to be made pursuant to Section 2950.09. Without a hearing, it is hereby determined that the above named offender is not a sexual predator." (Doc. 7-1 at PageID 375).

Plaintiff has also attached as exhibits to his complaint two entries dated October 29, 2008 by Hamilton County Pleas Court Judge Ralph Winkler. The first entry reads:

> This matter came before the Court for a review of *a previous sexual predator determination* by Judge Crush on October 5, 2001 by Entry only. The Court ordered a Clinic evaluation and then in consideration of all relevant factors set forth in R.C. 2950.09 and R.C. 2971.01, it is hereby determined, by clear and convincing evidence, that the above-named offender is a Sexually Oriented Offender.

3

(Doc. 7-1 at PageID 411)(emphasis added). The italicized language is confusing, since the October 5, 2001 Entry by Judge Crush reflects a determination "that the above named offender is <u>not</u> a sexual predator." (Doc. 7-1 at PageID 375, emphasis added).

In any event, the second entry by Judge Winkler attached to Plaintiff's complaint and bearing the same October 29, 2008 date states:

> Pursuant to R.C. 2950.11(F)(2), the Court has considered all relevant information and/or testimony presented by all parties in this matter and finds that the Petitioner has proven by clear and convincing evidence and grants Petitioner's Motion for Immediate Relief from Community Notification.
>
> Petitioner has been found to be a sexually oriented offender, and is therefore not subject to the community notification provisions under R.C. 2950.11.
>
> Therefore, the Court orders that the registration requirements, as set out in R.C. 2950.04, R.C. 2950.05, and R.C. 2950.06 as applicable to a **Tier III offender** apply to the Petitioner [Plaintiff DeNoma], and that he is not subject to the community notification provisions under R.C. 2950.11.

(Doc. 7-1, at PageID 412, emphasis original).

The two October 29, 2008 entries reflect the "sexually oriented offender" classification of Plaitniff under Megan's Law amendments to Chapter 2950,as well as the then-new registration requirements set forth in the 2007 amendment to Chapter 2950. However, in *State v. Williams*, 952 N.E.2d 1108 (Ohio 2011), the Ohio Supreme Court held that the registration requirements imposed in the 2007 amendment could not be retroactively applied to those individuals – including Plaintiff herein - whose crime was committed prior to the bill's enactment. *See also State v. Howard*, 983 N.E.2d 341, 345 (Ohio 2012)(explaining that those who committed their offenses before the effective date of the AWA are subject to the previous provisions of Megan's Law).

4

Plaintiff's "Count 3" stems directly from the "Sexual Predator Sentencing Risk Assessment Proceedings that resulted in the issuance of the October 29, 2008 entries classifying Plaintiff as a 'sexually oriented offender'" and stating that Plaintiff was subject to certain registration requirements.  (Doc. 8 at 10).  Plaintiff identifies as Defendants to Count 3: the former Ohio Attorney Generals, certain ODRC, OAPA and CCI defendants, a Hamilton County Common Pleas Court judge, the former Hamilton County Sheriff, the Hamilton County prosecuting attorneys, and the Hamilton County public defender.  (Doc. 7 at PageID 331).  Omitting only the list of Defendants' names, the entirety of Count 3 alleges:

> December 10, 2007, [list of Defendants] further colluded in abuse of process, conspired to deprive DeNoma of his case law civil rights, and continue false imprisonment of DeNoma. Without reason, subjecting DeNoma to unwarranted , punitive, ex post facto, calumnious, Violent Sexual Predator Sentencing Risk Assessment Proceedings pursuant to R.C. § 2971.04, § 5120.49 and § 5120.61, conducting malicious prosecution I double jeopardy proceedings in Case No. SP0800368, producing two conjunctive October 29th, 2008 ENTRIES citing ex post facto R.C. Chapter 2971, despite the multiple objections and federal constitutional questions repeatedly raised by DeNoma. Retroactively subjecting DeNoma to unwarranted punitive onerous burdens, duties obligations and liabilities of ex post facto new law post-release in-person-reporting (every day if homeless) on the States concomitant ESORN registry, effectively changing DeNoma's old law indefinite sentence to a new law definite sentence, causing continued imprisonment of DeNoma day for day of the 25 year maximum sentence, despite the multiple repeated objections and federal constitutional questions raised by DeNoma. Endangering, abducting and conveying DeNoma from his Ross County Chillicothe Correctional Institute medium security residence, unlawfully restraining DeNoma for 72 days in the maximum security Hamilton County Justice Center, violating the law of the case, contrary to R.C. §1.58, § 2941.13 and § 2950.09(C)(l)(3), State v. Dick, 738 N.E.2d 456 and State v. Smith (2004), 104 Ohio St.3d 106. Causing and resulting in the December 12, 2008 dismissal of DeNoma's Motion Contesting Reclassification as untimely in Ross County Common Pleas No. 08CI831; Dismissal affirmed December 8, 2009, by Fourth District

5

> Court of Appeals No. 09CA3089; Discretionary appeal denied March 10, 2010, Ohio Supreme Court No. GEN-2010-0093; Constituting criminal violations of <u>R.C. Sections 2905.02</u>, <u>2921.03</u>, <u>2921.04</u>, <u>2921.05</u>, continuing by their overt acts, all criminal violations of <u>COUNTS 1 and 2</u>.

(Doc. 7 at PageID 331-332, emphasis original).

In allowing a discrete portion of this claim to proceed, the undersigned focused on Plaintiff's allegation that the two October 2008 entries "[r]etroactively" subjected Plaintiff to "ex post facto new law post-release in-person-reporting…." However, the remainder of Count 3 was dismissed on screening. For example, the Court dismissed, for lack of subject matter jurisdiction, any claim challenging the state court proceedings that resulted in the October 2008 entries reclassifying Plaintiff as a "sexually oriented offender" subject to certain registration requirements, concluding that such a claim would be barred by the *Rooker-Feldman* doctrine. (Doc. 8 at 22). The Court further noted that the Hamilton County Common Pleas Court judge alternatively would be entitled to absolute judicial immunity, and that the prosecuting attorneys likewise would be entitled to prosecutorial immunity. Similarly, the Court found that Plaintiff had failed to state any claim against the public defender for failing to adequately represent him in 2008. (Doc. 8 at 24). The Court also held that Plaintiff had not stated a viable claim in Count 3 against the OAPA and CCI Defendants, or against any former Ohio Attorney General or certain ODRC Defendants in their individual capacities. (*Id.* at 25). The Court noted that other allegations were "simply too conclusory" and/or failed to state any cognizable constitutional claim in Count 3. (*Id.* at 26).

Despite dismissing most of the claim, the undersigned permitted the following portion of Count 3 to proceed beyond the screening level, stressing that the following

6

portion of Plaintiff's claim was being permitted "<u>out of an abundance of caution and in the absence of briefing by the parties</u>." (Doc. 8 at 31, emphasis added).

> [P]laintiff is allowed to proceed at this juncture only with a limited claim against the Ohio Attorney General and ODRC Director in their official capacit[ies] based on the allegation that plaintiff's constitutional rights have been and continue to be violated by the enforcement of certain registration provisions contained in the 2007 amendment of Ohio's sex offender registration statute as applied retroactively to him in accordance with the trial court's rulings on October 29, 2008 in Case No. SP008368. *Cf. Doe v. DeWine*, ___ F. Supp.3d ___, No. 1:12cv846, 2015 WL 1710968 (S.D. Ohio Apr. 15, 2015)(Dlott, J.)(denying motion to dismiss official-capacity claim against state officials stemming from the retroactive enforcement of amended provision in Ohio's sex offender registration and notification statute against the plaintiff previously adjudicated to be a "sexual predator"); *see also supra* pp. 4-5 n. 1; *State v. Howard*, 983 N.E.2d 341, 345 (Ohio 2012)(citing *State v. Williams*, 952 N.E.2d 1108, 1110 (Ohio 2011); *State v. Bodyke*, 933 N.E.2d 754 (Ohio 2010). However, all other allegations in Count 3 fail to state a claim upon which relief may be granted by this Court.

(Doc. 8 at 21-22, internal footnote omitted). On January 22, 2016, the Court adopted the Report and Recommendation of the undersigned as the opinion of the Court. (Doc. 36).

## II. Analysis

Presently pending are Defendants' motions to dismiss and Plaintiff's motion seeking preliminary injunction.

### A. Defendants' Motions to Dismiss (Docs. 37, 38)

On February 5, 2016, Defendant ODRC Director Gary Mohr and Defendant Attorney General Mike DeWine filed separate motions to dismiss in lieu of an answer. Both motions asserts that this Court lacks subject matter jurisdiction under the Eleventh Amendment for Plaintiff's claim for monetary relief, and that Plaintiff fails to state a claim on which relief can be granted.

7

**1. Eleventh Amendment Immunity**

Plaintiff's complaint seeks "judgment under 18 USC 1964 and 42 USC Sections 1983 and 1988 for court costs, expenses, attorney fees, compensatory, expectational [sic], foreseeable, consequential, prospective, accumulative, treble, punitive and exemplary damages of 500,000,000.00 with 10% interest compounded daily from October 1, 2001." (Doc. 7 at 23).

The undersigned agrees with Defendants that this Court lacks subject matter jurisdiction over Plaintiff's claim for monetary damages against the two identified Defendants. Because Plaintiff's limited claim was permitted to proceed against the Defendants only in their official capacities, Plaintiff's claims amount to a suit against the State of Ohio. *See Will v. Michigan Dep't of State Police*, 591 U.S. 58, 71 (1989)(citing *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985)). The State of Ohio has not waived its sovereign immunity. Therefore, the Eleventh Amendment bars this suit for monetary damages. *See Turker v. Ohio Dept of Rehabilitation & Corrections*, 157 F.3d 453, 456 (6th Cir. 1998)("It is well-established that a plaintiff cannot sue a state agency or any of its employees in their official capacities for monetary damages."). *See also generally Walker v. O'Brien*, Case No. 2:08-cv-523 (S.D. Ohio, R&R filed July 27, 2009)(dismissing suit against Ohio Department of Rehabilitation and Corrections by plaintiff who pled guilty in 1994 to felonious sexual penetration, seeking declaratory and injunctive relief from enforcement of Megan's Law amendment that allegedly unconstitutionally applied to him), adopted as opinion of the Court on August 28, 2009.

8

### 2. *Ex Parte Young*

The only possible exception to the Eleventh Amendment Immunity enjoyed by the Defendants would be under *Ex parte Young*, 209 U.S. 123 (1908), which permits some claims for prospective injunctive relief.  However, upon close review of Plaintiff's complaint in the context of the pending motions to dismiss, the undersigned first notes that even liberally construing Plaintiff's claim for relief on Count 3, Plaintiff appears to seek <u>only</u> monetary damages for this claim.  To that extent, the Eleventh Amendment would bar the entirety of Plaintiff's construed claim in Count 3.

This Court previously held that Plaintiff could proceed with the portion of Count 3 that was liberally construed to allege that Plaintiff's rights "have been and continue to be violated by the enforcement of certain registration provisions contained in the 2007 amendment of Ohio's sex offender registration statute as applied retroactively to him in accordance with the trial court's rulings on October 29, 2008." (Doc. 8 at 22; *see also* Doc. 8 at 31).  Although the undersigned briefly alluded to the entirety of Plaintiff's complaint as seeking both "damages and injunctive relief" (Doc. 8 at 6), the undersigned did not articulate any particular claims for injunctive relief other than those pertaining to Plaintiff's habeas petition.  On further close review of Plaintiff's complaint, the only reasonably construed claims for injunctive relief (to the extent that any such claims exist as liberally construed) appear to be in the context of now-dismissed claims, such as Count 1 (seeking reconsideration of the denial of parole or to overturn his guilty pleas), or Counts 4, 6, 8 and 10. (*See* Doc. 8 at 28, noting that those claims essentially sought reconsideration of various state court decisions).  In short, the sole surviving portion of

Count 3 appears to be subject to dismissal on grounds that Plaintiff seeks only monetary relief for the sole claim permitted to proceed.

Alternatively, and to the extent that any reviewing court would construe the claim as one seeking prospective injunctive relief (or permit Plaintiff amendment to seek such relief), the undersigned still would find the claim not to be within the *Ex parte Young* exception. Defendants argue in their respective motions that Plaintiff "has already received the relief he seeks" (Doc. 38 at 6) insofar as he has been excluded from retroactive application of the 2007 amendment and effectively reclassified under the prior Megan's Law classification as a matter of law. *See State v. Bodyke*, 126 Ohio St.3d 266, 93 N.E.2d 753 (Ohio 2010).

Defendants describe Plaintiff's claim as seeking a reclassification hearing so that Plaintiff is no longer classified as a Tier III Sex Offender under the Adam Walsh Act. (Doc. 37 at 5). However, under *Bodyke*, "Plaintiff returned to his pre-2008 judicially determined classification as a Sexually Oriented Offender as a matter of law." (Doc. 38 at 6; *see also* Doc. 37 at 6). The Ohio Supreme Court specifically held in *Bodyke* that "R.C. 2950.031 and 2950.032 may not be applied to offenders previously adjudicated by judges under Megan's Law, and the classification and community notification and registration orders imposed previously by judges are reinstated." *Bodyke*, 933 N.E.d at 768, ¶66. *Accord State v. Howard*, 983 N.E.2d at 345 (Ohio 2012).

Thus, as a matter of state law under *Bodyke*, any possible claim for injunctive relief has been rendered moot due to the reinstatement of Plaintiff's pre-2008 status, under Megan's Law, as a "sexually oriented offender" and not as a Tier III offender under the AWA amendments to Ohio's sex offender registration laws. "Because the

10

exercise of judicial power under Article III of the Constitution depends on the existence of a live case or controversy, mootness is a jurisdictional question." *Dennis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009)(citing *Lewis v. Continental Bank Corp.*, 393 U.S. 472, 477-478 (1990)). *See also* Entry dated October 29, 2008 that "it is hereby determined, by clear and convincing evidence, that the above-named offender [Plaintiff] is a Sexually Oriented Offender." (Doc. 7-1 at PageID 411).

Although Plaintiff did not respond to Defendant DeWine's motion, he filed two responses in opposition to Defendant Mohr's motion on February 18 and February 22, 2016. (Docs. 47, 48). In the identical responses, Plaintiff denies that his request for injunctive relief has been rendered moot as a matter of law based upon the Ohio Supreme Court's decision in *Bodyke*. He asserts that Defendant Mohr

> misleads the court, stating that DeNoma has already been returned to his pre-2007 Megan's Law classification, implying that DeNoma is/will be subjected to duties, obligations, and liabilities of new ex post facto sex offender registration laws, demonstrating Gary Mohr's involvement in ongoing overt actions effectively continuing a conspiracy to deprive DeNoma of his April 6, 1995 civil rights stare decisis case law remedy, <u>since DeNoma had never previously been reclassified nor required to register under Megan's Law, nor had DeNoma ever been subjected to duties, obligations and liabilities of sex offender registration</u>.

(Doc. 47 at 1; Doc. 48 at 1, emphasis added).

In short, Plaintiff does not dispute Defendants' contention that *Bodyke* eliminates any possible application of the post-2007 AWA amendments to him, but argues instead that *Bodyke* does not fully moot his claim because it held only that the AWA registration and notification amendment could not be retroactively applied to him. Plaintiff now contends that he is seeking much broader relief insofar as he seeks relief from <u>any</u> prior classification under Megan's Law, not merely his classification or reclassification under

11

the 2007 AWA amendment. According to Plaintiff, prior to 2008, he "had never previously been reclassified nor required to register under Megan's Law" and should not now be subjected to Megan's Law because that law also was enacted after the entry of his 1995 guilty pleas.

Plaintiff's opposition construes the limited portion of Count 3 that was permitted to proceed in a way that is incompatible with this Court's prior rulings. The undersigned allowed Plaintiff's claim in Count 3 to proceed only because the undersigned understood Plaintiff to be challenging the enforcement, by virtue of explicit language in the October 29, 2008 trial court entries, of "new registration requirements" contained "in the 2007 [AWA] amendment of Ohio's sex offender registration statute as applied retroactively to him." The Court relied on *Doe v. DeWine*, 99 F.Supp.3d 809 (S.D. Ohio 2015) to support the close decision to require the Defendants to file a response or answer to that limited claim. In his response in opposition to Defendants' motion to dismiss, Plaintiff now expressly disavows the sole portion of the construed claim that this Court permitted to proceed.

Plaintiff's explanation that he intended Count 3 to allege a claim that challenges any pre-2007 classification system relating to Ohio's sex offender registration laws and/or to challenge any retroactive application of the 1997 Megan's Law to his case simply does not present a claim that survived this Court's prior *sua sponte* dismissal on screening, nor could Plaintiff amend his complaint to assert such a claim. *See, generally, State v. Hayden*, 773 N.E.2d 402 (Ohio 2002)(holding that a classification order designating a defendant who had committed an offense in 1984 as a "sexually

12

oriented offender" without a hearing, in accordance with 1997 amendments incorporating Megan's Law, did not violate any constitutional requirements).

Plaintiff is presumed to understand the impact of *Hayden*, considering that among the claims that this Court previously dismissed was a claim in which Plaintiff sought to hold various Ohio Supreme Court justices liable for the decision in *Hayden*, on grounds that the decision unlawfully deprived "old law sex offenders of their civil rights.")(*See* Doc. 8 at 9). This Court rejected any possible cause of action based upon the decision in *Hayden* as "time-barred" among other reasons. (Doc. 8 at 18-20). Additionally, this Court held that it "lacks jurisdiction" over any claim "that the law was invalidly or unconstitutionally applied in his particular case" or that "the state trial court erred in reclassifying him as a 'sexually oriented offender' in 2008." (Doc. 8 at 23, emphasis added). *See also generally Walker v. O'Brien*, 2009 WL 2780158 at *3 (S.D. Ohio Aug. 26, 2009)(R&R describing challenge to 1998 entry that plaintiff is a sexually oriented offender as presumed to be "untimely," rejecting contention that claim was made timely by "continuing" classification and/or by reclassification under later amendment to Ohio law), adopted at 2009 WL 3063374 (S.D. Ohio Sept. 18, 2009).

With the benefit of briefing and closer review, it has become clear that neither the undersigned's view of Plaintiff's previously construed claim in Count 3, nor Plaintiff's view of his claim in opposition to Defendant's motion to dismiss, fall within the narrow confines of the type of claim at issue in *Doe v. DeWine*, 99 F. Supp.3d 809 (S.D. Ohio 2015).

Unlike Plaintiff DeNoma, Plaintiff Doe was classified as a "sexual predator" and not merely a "sexually oriented offender" under Megan's Law. Under 2003

13

amendments to Megan's Law, the sexual predator designation required Doe to submit to additional registration, notification, and other requirements following her release from prison. The same 2003 amendments prevented sexual predators from obtaining a hearing to prove that they were no longer dangerous. Unlike DeNoma, Plaintiff Doe admitted in her complaint that she was not challenging the 2008 amendments, since they could not be retroactively applied to her under *Bodyke*. (*See* Complaint at Doc. 1, ¶7, n.1 in Case No. 1:12-cv-846). Instead, Doe filed suit after her release from prison, alleging that the 2003 amendments were causing her harm based on her sexual predator status, including but not limited to inhibiting her ability to find affordable housing. In contrast to Plaintiff DeNoma who appears to seek only compensatory damages, Plaintiff Doe sought only declaratory relief through a judicial determination that the 2003 amendment to "Ohio Rev. Code §2950.07(B)(1) violates her substantive and procedural due process rights," and injunctive relief to require that "a hearing be scheduled in the sentencing court to determine whether she is currently dangerous." *Id.* at 814.

The *Doe* court denied the Attorney General DeWine's motion to dismiss on Eleventh Amendment grounds on the basis of the *Ex parte Young* exception, based upon very specific allegations that Doe was seeking prospective injunctive relief from an alleged ongoing constitutional violation caused by the retroactive application of the 2003 amendment to her as a "sexual predator." The Court rejected the Defendants' contention that Doe lacked standing to collaterally attack the classification status. The Court made clear that the denial of Defendants' motion to dismiss was because "<u>Plaintiff does not seek to collaterally challenge or reopen the Ohio sentencing court's</u>

judgment/initial classification" but instead was claiming only that the 2003 amendment "as enforced by Defendants, results in a current ongoing due process violation" for which plaintiff sought "prospective injunctive relief." *Id.* at 821 (emphasis added).

*Doe v. DeWine* is factually and legally distinguishable. In the present case the Defendants are entitled to dismissal of any conceivable claim previously construed under Count 3, or as re-characterized by Plaintiff in his opposition to Defendant's motion to dismiss. Plaintiff remains incarcerated and is not presently subject to any notification and registration requirements. Plaintiff DeNoma now appears to be seeking precisely that which Plaintiff Doe did not: monetary damages based upon a direct challenge to the Ohio sentencing court's initial classification of him as a sexually oriented offender under Megan's Law. *Bodyke* already precludes application of the later AWA amendments to him. This Court's prior holding that it lacks jurisdiction over any claim "that the law was invalidly or unconstitutionally applied in his particular case" or that "the state trial court erred in reclassifying him as a 'sexually oriented offender' in 2008" (Doc. 8 at 23, emphasis added) remains the law of this case and precludes further review of any such "new and improved" claim.

### 3. Failure to Include Particularized Allegations Against Defendant Mohr

As a third basis for dismissal, Defendant Mohr argues that Plaintiff's complaint fails to include any specific allegations against him that relate to Count 3.[1] (See Doc. 7 at 18). Defendant asserts that although Plaintiff mentions registration requirements, he

---

[1] As he did in objections to the R&R filed before Judge Dlott, (*see* Doc. 30 at 4), Defendant Mohr also argues that he is entitled to qualified immunity in his individual capacity. Since the undersigned previously determined that suit could proceed against Mohr only in his official capacity, the Court has no need to address the issue of qualified immunity.

15

"does not specifically articulate how the enforcement of the same equates to a cause of action pursuant to 42 U.S.C. §1983, or how Defendant Mohr is responsible for their implementation." (Doc. 38 at 7). Defendant notes that Plaintiff's complaint "does not mention Defendant Mohr in detailing his registration requirements," and that therefore any claims against Mohr should be dismissed.

The undersigned finds no reason to reach this argument (which was previously presented in objections) in light of the conclusion that Defendants are entitled to dismissal on Eleventh Amendment grounds of the sole remaining portion of Count 3 that survived initial screening.

### B. Plaintiff's Motions for Injunctive Relief (Docs. 4, 5)

On October 16, 2015, Plaintiff filed two motions which are properly construed as motions seeking preliminary injunctive relief. In the first "Motion for Injunction Ordering Defendant's [sic] to Cease and Desist Conspiracy of Organizational Extortion, Intimidation and Retaliation, and Provide for Petitioner's Mental and Physical Health and Safety While Confined," (Doc. 4), Plaintiff seeks an order "providing protection for [Plaintiff's] mental and physical health and safety as long as he remains confined." (*Id.* at 1). In his second "Motion for Order to Freeze All Assets of All Defendants." (Doc. 5), Plaintiff seeks an order freezing all monetary assets held by all Defendants.

Plaintiff argues that he has proven his entitlement to such relief, correctly citing factors relevant to the grant of injunctive relief, including but not limited the likelihood of his success on the merits of his claims. However, considering that nearly all of Plaintiff's claims and more than 100 Defendants were dismissed on initial screening, and that the undersigned now recommends the dismissal of the only remaining claims,

16

Plaintiff's optimistic view of the likelihood of his success is not well-founded. Aside from the fact that the Eleventh Amendment precludes any award of monetary damages, the basis for any possible injunctive relief is rendered moot by this Report and Recommendation.

### III. Conclusion and Recommendation

For the reasons stated herein, **IT IS RECOMMENDED:**

1. Defendants' motions to dismiss (Docs. 37, 38) should be GRANTED, with all remaining claims in this case to be DISMISSED with prejudice, and this case to be closed;

2. Plaintiff's motions for an injunction and for an order to freeze all assets, construed as motions seeking preliminary injunctive relief, (Docs. 4, 5), should be DENIED.

        *s/ Stephanie K. Bowman*
        Stephanie K. Bowman
        United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANTHONY J. DENOMA,

    Plaintiff,

v.

GOVERNOR JOHN R. KASICH, et al.,

    Defendants.

Case No. 1:15-cv-594
Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).